J-S53020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDDIE RAY GRAY, | |
| Appellant | No. 138 WDA 2014 |

Appeal from the Judgment of Sentence of August 16, 2013
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-CR-0000080-2013

BEFORE:  DONOHUE, OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 18, 2014**

Appellant, Eddie Ray Gray, appeals from the judgment of sentence entered on August 16, 2013, as made final by the denial of Appellant's post-sentence motion on December 6, 2013.  We affirm.

On September 17, 2012, the Commonwealth filed a criminal complaint against Appellant and charged Appellant with a multitude of crimes, including multiple counts of aggravated assault, as well as assault by a prisoner, disarming a law enforcement officer, use or possession of electric or electronic incapacitation device, and criminal attempt of escape by a prisoner.  Appellant proceeded to a jury trial, where the following evidence was presented.

The Commonwealth first presented the testimony of Audrey Cline, who is a corrections officer at the Warren County Prison, in Warren County,

---

*Retired Senior Judge assigned to the Superior Court.

Pennsylvania. Officer Cline testified that, on September 2, 2012, she was working the 7:00 p.m. to 7:00 a.m. shift at the Warren County Prison. N.T. Trial, 8/16/13, at 59. At approximately 9:05 p.m. on September 2, 2012, Officer Cline was working in the prison's general population unit and preparing for the nightly lock down. *Id.* at 59-60. At the time, Appellant was an inmate of the prison and Appellant was housed in the general population unit. *Id.* at 59.

As Officer Cline testified, while she was in the hallway distributing medication to some of the inmates, Appellant "jumped [her] from behind, wrapped [her] around in a bear hug from behind, [tackled her to] the ground" and removed her TASER gun from its holster. *Id.* at 60 and 66. Officer Cline testified that she fought back and tried to get up from the ground, but "[e]very time [she] tried to get up, [Appellant] shot [her] with the" TASER. *Id.* at 60. As Officer Cline testified, Appellant must have hit her with the TASER gun "five or six times." *Id.* Moreover, Officer Cline testified that, when Appellant was striking her with the TASER, the probes on the TASER gun did not deploy; "[s]o, [what she] received [from the TASER] was considered a drive stun, which is [] 50,000 volts of pain" with each of the TASER strikes.[1] *Id.* at 69-70. Officer Cline testified that each of the strikes caused her to suffer "excruciating pain." *Id.* at 76-77.[2]

_____

[1] Officer Cline testified:

*(Footnote Continued Next Page)*

- 2 -

Warren County Prison corrections officer Rebecca Hanlin ran down a stairwell to come to Officer Cline's aid. As Officer Cline testified, when Officer Hanlin exited the stairwell doorway and entered the general population unit hallway, Appellant "pointed the [TASER] at [Officer Hanlin].

_____ (Footnote Continued) _____

> [The TASER gun] is an immobilizing device. There are two ways you can use the [TASER]. The first is with a cartridge. This has wires with two probe[s] in it. It's set off by a little nitrogen capsule that's in there. That's like when you see on [C]ops, where people fall to [the] ground screaming, what it does is, it jumbles your neuromuscular system.
>
> And we, basically, incapacitated for however long our [TASER] is going. Our models do five second rounds. So, five seconds [of electricity], basically.
>
> . . .
>
> [T]he second way to use the [TASER is a drive stun]. . . . A drive stun is completely pain compliance, is how it works. 50,000 volts. . . . You dig into the person's arm or leg [with the metal contacts of the TASER]. And, it's a pain compliance tool.

N.T. Trial, 8/16/13, at 73-74.

[2] During Officer Cline's testimony, the Commonwealth asked Officer Cline to produce her TASER gun – which was the same TASER gun that Appellant used against the officer on the night in question. N.T. Trial, 8/16/13, at 72. The Commonwealth then used the gun as a visual aid, to help the jury understand Officer Cline's descriptive testimony regarding the TASER's operation. *See id.* at 72-76. The Commonwealth did not move for the gun to be admitted into evidence and Appellant did not object to the manner in which the Commonwealth used the TASER at trial. *Id.*

She yelled, don't shoot, and went back into the stairwell." *Id.* at 70 and

119. Officer Cline testified:

> After that, the stairwell door was left open. So, [Appellant] ran down the stairwell. All the way down to the basement two floors down. My Sergeant, who was working that evening, Sergeant [Matthew] Wallin, and another corrections officer, Officer [Steve] Belcher[,] came to the second floor off the elevator . . . [and] pursued [Appellant] down the stairs.
>
> I followed. And, we were eventually able to restrain [Appellant] in the basement.

*Id.* at 70-71 and 137.

Moreover, Officer Cline testified that Officer Hanlin also pursued

Appellant into the basement and that, before the officers could restrain

Appellant, Appellant had placed Officer Hanlin in a "choke hold." *Id.* at 137-

138.

Officer Hanlin next testified at Appellant's trial. Officer Hanlin testified

that, on the night in question, she was working in the prison in her capacity

as a corrections officer. Officer Hanlin testified that, when she ran to Officer

Cline's aid on the night of September 2, 2012, she ran out of a stairwell and

into the general population unit hallway. When she exited the doorway, she

immediately saw that Appellant was standing approximately ten feet away

from her, and pointing a TASER gun at her face. *Id.* at 179 and 181.

Officer Hanlin testified that she took evasive action by jumping back through

the doorway, but that Appellant followed into the stairwell, grabbed her

throat, shoved her against the wall, pressed the TASER to her cheek, and

- 4 -

told her that she "was going with him." *Id.* at 181-182. As Officer Hanlin testified, Appellant began to walk her down the stairwell; however, Officer Hanlin tripped on the stairs, and thus forced Appellant to let go of her. *Id.* at 183. Appellant then ran down the stairwell, with Officer Hanlin in pursuit. Officer Hanlin testified that she was able to find Appellant in the basement, get Appellant onto the ground, and hold Appellant until the other officers arrived, at which point Appellant was shot with a TASER gun and restrained. *Id.* at 183-184. Officer Hanlin testified that she was unable to remember whether Appellant had placed her in a "choke hold" in the basement, as Officer Cline had testified. *Id.* at 200.

The Commonwealth also presented the testimony of Officer Belcher and Sergeant Wallin. Both testified that they were working as correctional officers on the night in question and that, when they arrived in the general population hallway in response to Officer Cline's distress call: they saw Appellant standing ten to 20 feet away from them, holding a TASER gun; Appellant pointed the gun directly at both of their faces and painted both of their faces with the TASER's red marking laser; Appellant ran away from them and they followed Appellant down the stairwell and into the basement; when they reached the basement, they saw Appellant holding Officer Hanlin, with the crook of his arm around her throat, in a choke hold; they ordered Appellant to let go of Officer Hanlin; Appellant complied with the order and, after Appellant let go of Officer Hanlin, Officer Belcher shot Appellant with his TASER gun and the officers took control over Appellant. *Id.* at 215-222,

227, 237, and 250-256. Moreover, both Officer Belcher and Sergeant Wallin testified that Appellant's action of pointing the TASER gun at their faces was extraordinarily dangerous, as the TASER gun shoots harpoon-like probes that can easily pierce an eyeball. *Id.* at 226 and 256. They both testified that, when the TASER's laser sight passed over their eyes, they feared that they would be shot in the eye. *Id.*

Finally, the Commonwealth presented the testimony of Sergeant Ryan Tipton, who is a certified TASER instructor and TASER technician, as well as an employee of the Warren County Prison. *Id.* at 290. Sergeant Tipton testified:

> Every time that [a TASER] is fired, every time the trigger is pulled on it, it will generate a report inside that will tell us the sequence, which time it was fired, the Greenwich [M]ean [T]ime, the local time, the duration that the [TASER] went. The battery life. And, then the temperature [in C]elsius.

*Id.* at 294.

Sergeant Tipton testified that he analyzed the report that Officer Cline's TASER generated on the night of September 2, 2012, and the report showed that the TASER was fired **nine** times. As the sergeant testified:

> On that evening when I generated that report, the sequence started at number 200, and went to number 208. And, looking at what was reported with it, was, the [TASER] was fired nine times.
>
> And, out of those nine, eight out of the nine times, it cycled a full five seconds. When I pull the trigger on the [TASER], it will cycle for five seconds, and then it will shut itself off.

- 6 -

> One of the times[,] it cycled for eight seconds, which would have meant that a person would have pulled the trigger and held the trigger down. If you hold the trigger down, the [TASER] will continue to fire. It will continue until you release your finger.
>
> . . .
>
> [From the report, y]ou can tell that [the nine TASER discharges occurred] within seconds of each other. There was one there that there was a five second difference. Seven second difference. Another seven second difference. Five second difference.
>
> So, it was consistently. As soon as the thing was stopping, looking at this report, it was being pulled again.

*Id.* at 295-296 and 322.

At the conclusion of trial, the jury found Appellant guilty of: Count 1, aggravated assault against Officer Cline, pursuant to 18 Pa.C.S.A. § 2702(a)(3); Count 2, aggravated assault against Officer Cline, pursuant to 18 Pa.C.S.A. § 2702(a)(6); Count 3, aggravated assault against Officer Cline, pursuant to 18 Pa.C.S.A. § 2702(a)(7); Count 4, assault by prisoner against Officer Cline, pursuant to 18 Pa.C.S.A. § 2703(a); Count 5, disarming a law enforcement officer, pursuant to 18 Pa.C.S.A. § 5104.1(a)(1); Count 14, use or possession of electric or electronic incapacitation device, pursuant to 18 Pa.C.S.A. § 908.1; and, Count 15, criminal attempt at escape, pursuant to 18 Pa.C.S.A. §§ 901(a) and 5121. N.T. Trial, 8/16/13, at 437-439. The jury found Appellant not guilty of aggravated assault, criminal attempt, and assault by prisoner, as those charges related to Officer Hanlin, Officer Belcher, and Sergeant Wallin. *Id.*

- 7 -

On August 16, 2013, the trial court sentenced Appellant to serve an aggregate term of 15-years-and-two-months to 30-years-and-four-months in prison. The trial court structured Appellant's sentence in the following manner:[3]

> Count 1, aggravated assault, 18 Pa.C.S.A. § 2702(a)(3): 33 to 66 months in prison, with the sentence to be served consecutively to the sentence that Appellant was currently serving;
>
> Count 2, aggravated assault, 18 Pa.C.S.A. § 2702(a)(6): 33 to 66 months in prison, concurrent with Count 1;
>
> Count 3, aggravated assault, 18 Pa.C.S.A. § 2702(a)(7): 33 to 66 months in prison, concurrent with Count 1 and Count 2;
>
> Count 4, assault by prisoner, 18 Pa.C.S.A. § 2703(a): 40 to 80 months in prison, consecutive to the sentence imposed at Count 1;
>
> Count 5, disarming a law enforcement officer, 18 Pa.C.S.A. § 5104.1(a)(1), 30 to 60 months in prison, consecutive to the sentence imposed at Count 4;
>
> Count 14, use or possession of electric or electronic incapacitation device, pursuant to 18 Pa.C.S.A. § 908.1, 46 to 92 months in prison, consecutive to the sentence imposed at Count 5;
>
> Count 15, criminal attempt at escape, pursuant to 18 Pa.C.S.A. §§ 901(a) and 5121, 33 to 66 months in prison, consecutive to the sentence imposed at Count 14.

_____

[3] For ease of reading and recognition, we have indented this portion of the memorandum.

On August 26, 2013, Appellant filed a post-sentence motion, wherein Appellant raised no claims, but declared – in boilerplate fashion – that he was requesting the following relief:

> A. a motion for judgment of acquittal;
> B. a motion in arrest of judgment;
> C. a motion for a new trial; and/or
> D. a motion to modify sentence.

Appellant's Post-Sentence Motion, 8/26/13, at 1-2.

The trial court denied Appellant' post-sentence motion on December 6, 2013 and Appellant filed a timely notice of appeal.  Now on appeal, Appellant raises the following two claims:

> [1.] Whether [Appellant's] sentence within the sentencing guidelines involves circumstances where the application of the guidelines would be clearly unreasonable[?]

> [2.] Whether [Appellant] was denied a fair trial when the Commonwealth failed to disclose the TASER, allegedly used in this incident, was not taken into police custody, tagged into evidence, and preserved pending trial, until the Commonwealth's final witness, which was long after the TASER had been admitted into evidence and was used throughout the trial[?]

Appellant's Brief at 6 (some internal capitalization omitted).

Appellant first claims that the trial court abused its discretion by imposing a manifestly excessive sentence.  This claim is waived.

Appellant's challenge is to the discretionary aspects of his sentence. We note that "sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." **Commonwealth v. Ritchey**, 779 A.2d 1183, 1185 (Pa. Super.

2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, Appellant did not challenge the discretionary aspects of his sentence during the sentencing hearing and Appellant did not raise any claim, whatsoever, in his post-sentence motion other than to make the general statement that he was filing "a motion to modify sentence." Appellant's Post-Sentence Motion, 8/26/13, at 2. As such, Appellant's discretionary aspect of sentencing claim is waived on appeal. Pa.R.Crim.P. 720; Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

With respect to Appellant's second and final claim on appeal, Appellant contends that he "was denied a fair trial when the Commonwealth introduced the [TASER] that was allegedly used in this incident without

disclosing until its final witness that the [TASER] was never taken into police custody as evidence and preserved for trial." Appellant's Brief at 13-14. This claim is waived, as Appellant never objected to the use of the TASER at trial. *See* N.T. Trial, 8/16/13, at 72-76; Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2014